IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES A. HENSON, JR.                    *

Plaintiff                               *

v                                       *            Civil Action No. RDB-16-0053

LIEUTENANT SAWYER, et al.,              *

Defendants                              *
                                      ***

## MEMORANDUM OPINION

Pending is a Motion to Dismiss FILED BY Defendant Wexford Health Sources, Inc.[1]

ECF 26.[2]  Also pending is a Motion to Dismiss, or in the alternative, Motion for Summary

Judgment FILED BY Defendant Lieutenant Sawyer. ECF 37. Plaintiff has responded. ECF 44.[3]

Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local

Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' dispositive motions will be

GRANTED.

### I. Background

The case was instituted upon receipt of a civil rights Complaint filed by Plaintiff James

Henson, an inmate currently confined at the North Branch Correctional Institution ("NBCI").[4]

ECF 1.  Plaintiff  named as Defendants Lieutenant Sawyer, Subordinates in Housing Unit #2,

---

[1]      The Clerk shall amend the docket to reflect the correct name of Defendant.

[2]      Citations are to the Court's electronic docket.

[3]      Plaintiff has filed a Motion for Partial Summary Judgment (ECF 44) which has been opposed by
Defendants. ECF 45 & 47. To the extent Plaintiff's Motion raises new claims such as denial of mental health care,
conditions of confinement claims, denial of access to the courts, etc., such claims are not properly before the Court
and will not be considered.

[4]      Plaintiff's numerous filings are difficult to decipher.  To the extent Plaintiff raises any new issues in his
filings; those issues are not properly before the Court and will not be considered.

and Wexford Health, Inc.   ECF 1, p. 1. He alleges that Defendants have violated his constitutional rights by denying him chronic care medical treatment for high blood pressure, pain medication for his lower back and right shoulder, and treatment for "possible diabetes" for which he has a family history.  He states that unnamed Defendants "continue to use force" to put him in a cell with known violent criminals in order to cause him serious bodily harm, torture, and "unpleasantness."[5]   He alleges this is done in retaliation for his having filed grievances and

---

[5] Plaintiff has filed numerous cases alleging correctional employees intentionally placing him in cells with dangerous inmates. He has been unsuccessful in these claims.

He previously filed suit regarding an assault as well as allegations concerning Correctional Officers Wilson, Merling, Lark and Weber assigning him to a cell with Inmate Jenkins, an alleged "professed racist." *See Henson v. Likin*, Civil Action No. RWT-11-2719 (D. Md.). Defendants were granted summary judgment in that case.

Plaintiff previously filed suit against CO II Jesse Lambert, CO II Nicholas Soltas, CO II Steven Miller, CO II Randolph Bennett, CO II Christopher Ortt, CO II Joshua Tart, and CO II Shawn Murray, alleging they assigned him to cells with gang members and advised gang members on the unit that Plaintiff was a rapist. He reiterated his claim regarding the assault by Jenkins and sought protective custody and a federal investigation. *See Henson v. Lambert*, Civil Action No. RWT-12-3271. Defendants were granted summary judgment in that case.

Plaintiff's previously filed suit against Lt. Dale Smith, Case Worker Gainer, Caseworker Sindy, Lt. Miller, Sgt. Iser, Sgt. Guilliam, Sgt. Tyndale, again alleging overall failure to protect and lack of a policy to address risks to Plaintiff's health and safety and an overarching conspiracy, was likewise dismissed. *See Henson v. Smith*, Civil Action No. RWT-13-2266 (D. Md.).

Plaintiff previously sued Warden Frank B. Bishop, Jr., Lt. William E. Miller, Major Robert M. Friend, Lt. Bradley Wilt, Sergeant Walter Iser, CO II Jesse L. Lambert, CO II Christopher Anderson, CO II Nicolas Soltas, and CO II Steven Miller alleging that he was the target of a campaign of murder carried out by correctional staff and specifying an assault on June 20, 2014. *See Henson v. Bishop*, Civil Action No. RDB-14-2131 (D. Md.). Defendants were granted summary judgment in that case.

Other complaints raising bald conspiracy claims were dismissed *sua sponte* by the Court. *See Henson v. Wilt, et al.*, Civil Action No. RDB-14-3724 (D. Md.); *Henson v. Friend et al.*, Civil Action No. RDB-14-3825 (D. Md.), and *Henson v. Miller et al.*, Civil Action No. RDB-15-28 (D. Md.).

Where there has been a final judgment on the merits in a prior suit; an identity of the cause of action in both the earlier and the later suit; and an identity of parties or their privies in the two suits, *res judicata* is established. *See Pension Ben. Guar. Corp. v. Beverley*, 404 F. 3d 243, 248 (4th Cir. 2005).   The doctrine of *res judicata* precludes the assertion of a claim after a judgment on the merits in a prior suit by the same parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F. 2d 1054, 1057 (4th Cir. 1991).  In addition, "'[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id.*, quoting *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.*, 892 F. 2d 355, 359 (4th Cir. 1989).

lawsuits against influential Maryland state officials.  He alleges that the conduct complained of

has occurred from September, 2015 throughout 2016. He also alleges that Defendants conspired

so transmit false oral and written statements with the intent to deceive. *Id.*

Plaintiff's Complaint contains no specific allegations as to Defendant Sawyer. In a

subsequent filing, however, Plaintiff alleges that Sawyer would not process any of Plaintiff's

complaints and failed to train and supervise his subordinates.  ECF 5, p. 4.   As relief, Plaintiff

seeks compensatory and punitive damages, protective custody, a federal investigation, and an

Interstate Corrections Compact Transfer.   ECF 1, p. 3.

Defendants indicate that Plaintiff was transferred from Housing Unit 1 at NBCI to

Housing Unit 2 on November 5, 2015. ECF 37-3, p. 2; ECF 37-4, ¶ 3.  Plaintiff was housed on

Housing Unit 2, in a single cell, from November 5, 2015 to January 13, 2016. *Id.*  Lieutenant

Thomas Sawyer was assigned to NBCI at that time and supervised the staff in Housing Unit 2.

ECF 37-4, ¶¶ 1 & 2.

## A.    Administrative Remedies

During Plaintiff's assignment to Housing Unit 2, Sergeant Forney and Sergeant Thomas

were also assigned to the unit. ECF 37-5. ¶ 3; ECF 37-6, ¶ 2.  They were responsible for

transmitting any grievance filed by an inmate on Housing Unit 2 to the Administrative Remedies

Procedure ("ARP") Coordinator.  ECF 37-5, ¶ 3.  Correctional officers assigned to NBCI receive

training on the ARP process including institutional directives concerning processing ARPs. *Id.*

Forney and Thomas aver that they did not interfere with or hinder Plaintiff from filing ARPs.

ECF 37-5, ¶3; ECF 37-6, ¶ 3. Sergeant Iames was a relief sergeant for Housing Unit 2 and

worked on the unit occasionally.  ECF 37-7, ¶ 3.  He also declares that he did not interfere with

3

or hinder Plaintiff from filing ARPs. *Id.* Sawyer indicates that Plaintiff never complained to him that any of his grievances were not filed ECF 37-4, ¶ 4. Additionally Sawyer was not aware that any officer failed to follow the ARP process for Plaintiff. *Id.*

Jared Zais is the ARP Coordinator for NBCI. ECF 37-8, ¶ 2. As ARP Coordinator Zais receives, acknowledges and directs the investigation of ARPs submitted to the Warden's Office by NBCI inmates. Zais records each complaint submitted by every inmate at NBCI. *Id.* Each ARP submitted is logged under the inmate's DOC number as well as under its own individual number and the ARP log can be accessed and the ARP retrieved using either number. *Id.*The ARP Coordinator also keeps records of appeals from adverse decisions. *Id.* Zais searched Plaintiff's ARP record. Plaintiff filed a complaint on January 4, 2016, while housed on Housing Unit 2, complaining that the finance office stole money from his account. *Id.*, ¶ 3. No other ARPs were filed by Plaintiff during the relevant time period. *Id.* Plaintiff's ARP index lists 185 ARPs filed by Plaintiff from August 14, 2009 to July 17, 2016. *Id.*

Russel Neverdon, Sr., Executive Director of the Inmate Grievance Office ("IGO"), avers that Plaintiff filed eight grievances with the IGO from November 6, 2015 to July 25, 2016. ECF 37-9, ¶ 3. None of the grievances were filed while Plaintiff was housed on Housing Unit 2 at NBCI or concerned his inability to file grievances. *Id.*

**B. Medical Care**

As to Plaintiff's claim regarding denial of medical care. Sawyer avers that he has no personal involvement in the provision of medical care. ECF 37-4, ¶ 5. He has no authority to make decisions concerning inmates' medical care. Inmates may submit sick calls slips to the medical department at any time and medical staff determine if medical evaluation or treatment is

4

needed and make the appropriate arrangements for the inmate to be seen. *Id.* If an appointment is made for an inmate on segregation, correctional staff are responsible for handcuffing the inmate and escorting him to the unit medical room or to the Medical Department. *Id.* Inmates housed on disciplinary segregation tiers who are prescribed medication receive their medication daily from medical staff at their cell. Sawyer avers that he did not interfere with, hinder, or delay medical treatment or care for Plaintiff. Moreover, he is unaware of any correctional officer doing so. *Id.*

**C.      Use of Force**

Defendants deny that Plaintiff was involved in any use of force while housed in Housing Unit 2. *Id.*, ¶ 6. Sawyer avers that he did not use excessive force against Plaintiff nor is he aware of any correction staff having used excessive force against Plaintiff. *Id.* Correction staff are trained on the use of force policy which prohibits excessive use of force to be used against inmates. *Id.* Additionally,  Serious Incident Reports are created when an inmate is involved in an assault and also to document any injuries or assaults on staff. *Id.*, ¶ 7. The serious incident report log indicates that Plaintiff was not involved in any serious incident reports while housed on Housing Unit 2. *Id.*

**D.      Retaliation**

Sawyer avers that he did not make any false statements as to Plaintiff and did not retaliate against Plaintiff. *Id.*, ¶ 8. Sawyer also indicates he is not aware of any other correctional staff retaliating against Plaintiff. *Id.*

## II.    Non-dispositive Motions

### A.    Motions to Strike

After filing the initial Complaint, the Court received 25 letters from Plaintiff referencing 183 exhibits. *See* ECF 5-10, 12-13, 15-18, 22-24, 29-31, 33, 35-36, 41-43, 46, 48.

Defendants Wexford Health Sources, Inc. and Lt. Sawyer have filed Motions to Strike ECF 5-10, 12-13, 15-18, 22-24, 29-31, 33, 35-36. ECF 25 & 39. Defendants accurately observe that Plaintiff's handwritten filings are nearly indecipherable and do not pertain solely to the allegations in the initial Complaint. Additionally, Plaintiff's filings do not comply with Fed. R. Civ. Pro. Rule 15(a) or 15(d) regarding supplemental pleadings or amended complaints.

Given Plaintiff's self-represented status, the Motions to Strike shall be denied. The documents filed by Plaintiff, which consist primarily of copies of inmate grievances, medical records, orders of this Court, documents filed in and by State courts, with Plaintiff's handwriting over top and around the pages, shall remain on the docket and have been reviewed by the Court. The filings shall not, however, be treated as supplemental or amended Complaints.

To the extent Plaintiff claims in these filing a vast conspiracy against him, this conspiracy claim has been investigated and found unsubstantiated, resulting in the dismissal of the claim both administratively and judicially. *See e.g. Henson v. Likin,* Civil Action No. RWT-11-2719 (D. Md.); *Henson v. Miller,* Civil Action No. RWT-12-763 (D. Md.); *Henson v. Lambert,* Civil Action No. RWT-12-3271 (D. Md.); *Henson v. Smith, et al.,* Civil Action No. RWT-13-2266 (D.Md.); *Henson v. Bishop,* RDB-14-2131 (D. Md.) (dismissing for failure to exhaust administrative remedies but noting affidavits of all correctional staff that they had not: submitted false incident reports, encouraged the submission of falsified medical reports, or instructed

6

anyone to house Plaintiff with violent, dangerous gang members.)  Those claims will not be addressed again.  To the extent Plaintiff's filings include claims not included in his initial filing, those claims are not properly before the Court and will not be addressed.

**B.    Discovery**

Also pending are Plaintiff's Motion for an Order Compelling Discovery and Motion for Production of Documents.  ECF 20 & 21.  Plaintiff seeks an Order directing Defendant Sawyer to provide him the following documents:

1.   Maryland State Police Forensic Expert Test in Case No. K-2009-2263,  Anne Arundel Circuit Court;
2.   November 20, 2009, Baltimore Sun Crime Section;
3.   October 21, 1993, Emergency Physicians Notes;
4.   "All written statements, exhibits originals and copies, identifiable as reports about the case/incident on 12/22/2007 through 1/13/2016 to include 9/9/2009 10:30 a.m....Annapolis City Police Investigation William Johns...."
5.   Plaintiff's medical records from 2005 to 2016;
6.   Rules, regulations and policies governing the Maryland Division of Corrections treatment of chronic care prisoner with high blood pressure and family history of diabetes; and
7.   Any and all documents signed by plaintiff in his past civil rights cases.

ECF 21, pp. 1-2.

The motions will be denied.  Discovery may not commence before Defendants have answered or otherwise responded to the Complaint, and then only after a Scheduling Order has been issued by this Court.  *See* Local Rule 104.4 (D. Md. 2016).[6]  Plaintiff's Motions were filed prior to Defendants' responding to the Complaint.  At that stage of litigation, Plaintiff was not entitled to engage in discovery.

---

[6]     "[D]iscovery shall not commence...until a scheduling order is entered."

Given that dispositive motions are now pending before the Court, and in light of
Plaintiff's self- represented status, it is appropriate to consider the requests for discovery in light
of Federal Rule of Civil Procedure 56(d), which provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it
> cannot present facts to justify its opposition, the court may:
>
> 1.    Defer considering the motion or deny it;
> 2.    Allow time to obtain affidavits or declarations or to take discovery; or
> 3.    Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an
opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Inudstries,
Inc.,* 637 F.3d 435, 448-49 (4th Circ. 2011). However, "the party opposing summary judgment
'cannot complain that summary judgment was granted without discovery unless that party has
made an attempt to oppose the motion on the grounds that more time was needed for
discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002)
(quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996)). To raise
adequately the issue that discovery is needed, the non-movant typically must file an affidavit or
declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons,
it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ.
P. 56(d) (formerly Rule 56(d)), explaining why "for specified reasons, it cannot represent facts
essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods,*
302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of
discovery.'" *Hamilton v. Mayor & City Council of Baltimore,* 807 F. Supp. 2d 331, 342 (D. Md.
2011) (quoting *Young v. UPS,* No. DKC-08-2586, 2011 WL 665321, at \*20, (D. Md. Feb. 14,

2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

Plaintiff has not provided an affidavit in support of his request for discovery. More importantly, he fails to explain how any of the requested material is necessary to his opposition to the pending dispositive motions. Notably, the first four items requested by Plaintiff do not appear to have anything to do with the instant case but appear to pertain to his underlying criminal conviction. Items 5 and 6, seeking Plaintiff's medical records and policies regarding medical care, are not necessary to his opposition to Wexford's dispositive motion which seeks dismissal of the complaint against them based on the theory of respondeat superior discussed more fully below. Plaintiff is also not entitled to his last request regarding all documents signed by him in all of his civil rights cases. Such documents are neither in the control of Defendants, nor has Plaintiff offered any indication how these documents would assist in the prosecution of his case. As such, Plaintiff's requests for discovery will be denied.

### III. Standard of Review

**A. Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

**B. Motion for Summary Judgment**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

10

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have

the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## IV. Analysis

### A.    Respondeat Superior

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Plaintiff's claims against Wexford Health Source, Inc. are based solely on the doctrine of respondeat superior and shall be dismissed.

Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13

12

F.3d 791, 799 (4th Cir. 1994). Plaintiff's bald allegations that Sawyer failed to adequately train or supervise his staff are unsupported by the record before the Court. Plaintiff has failed to properly allege, much less demonstrate, a claim of supervisory liability as to Sawyer. Additionally, Plaintiff has failed to allege, any personal involvement by Sawyer in the violation of his rights. As such, Sawyer is entitled to dismissal. *Vinnedge v. Gibbs*, 550 F. 2d 923, 928 (4th Cir. 1977) (holding there must be personal involvement by defendant in alleged violation in order for liability to exist under §1983).

**B.      Subordinates in Housing Unit #2**

Essential to sustaining an action under § 1983 are the presence of two elements. Specifically, Plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "Subordinates in Housing Unit #2" is not a person amenable to suit under §1983.

**C.      Interference with ARPs**

Plaintiff's complaints regarding the processing of his ARPs are unavailing. While the long standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994), with the passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), the issue is less clear. The PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner. The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further clarification regarding exhaustion as a pleading requirement was announced by the United States Court of Appeals for the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674 (4th Cir. 2005), wherein the court held, "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Id.* at 681.

To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct, that evidence may be presented in response to the affirmative defense. *Id.* at 682. Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause. Assuming, *arguendo*, that correctional staff did not satisfactorily process, investigate, or respond to Plaintiff's remedy requests, Plaintiff's claim fails as he has not alleged, much less demonstrated, any injury as a result of the alleged failure to properly process his complaints.

**D.    Medical Claim**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the

defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

The record evidence demonstrates that Sawyer did not have direct personal involvement in Plaintiff's medical care. Plaintiff has offered no evidence that Sawyer interfered with or hindered Plaintiff from receiving medical care. Nor has Plaintiff provided any evidence that

15

Sawyer was aware of anyone he supervised interfering with or hindering Plaintiff's access to medical care.

### E.    Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) *(judgment vacated on other grounds*, 525 U.S. 802 (1998) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACL U of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993). "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d at 74. Plaintiff's bald claims of retaliation are insufficient.

**F.      Injunctive Relief**

Lastly, Plaintiff is not entitled to any of the injunctive relief he requests. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial than the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011). Plaintiff's requests for injunctive relief shall be denied, as he does not clearly establish that he would suffer immediate and irreparable injury, loss, or damage, if the relief requested is not provided.

Substantial deference is to be given to the judgment of prison administrators. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This deference is at its greatest when prison order is at stake. *See In Re Long Term Administrative Segregation of Inmates Designated as Five Percenters,* 174 F.3d 464, 469 (2003). Plaintiff has failed to produce evidence that he is likely to suffer irreparable harm if this Court does not order protective custody or a transfer. Moreover, it is not the province of this Court to determine how a particular prison might be more beneficently operated: the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Plaintiff is, therefore, not entitled to injunctive relief and his requests for same shall be denied.

## V. Conclusion

For the aforementioned reasons, Defendant Wexford Heath, Inc.'s Motion to Dismiss shall be granted. Defendant Lt. Sawyer's Motion to Dismiss, or in the alternative Motion for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted. Plaintiff's complaint against Subordinates in Housing Unit #2 shall be dismissed. Plaintiff's Motion for Partial Summary Judgment shall also be denied. A separate Order follows.

NOVEMBER 23, 2016
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

18